UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE ADAM GOLDMAN,

       Plaintiff

v.

LEE MCROBERTS,
MICHAEL DOSS,
ERICK VANDENBURG,
CHRISTOPHER WHITFORD,
SCOTT MCALLISTER,
JEROLD SCHNEIDER,
VERA CONERLY,
JAMIE BROCKWELL, and
RODNEY RICHARDSON,

       Defendants.
_____/

Case No. 2:17-cv-14093
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO SANCTION AND DISQUALIFY THE ATTORNEY GENERAL (DE 35)

**I. OPINION**

    **A. Background**

Plaintiff filed this lawsuit in December 2017, at which point he was incarcerated at the G. Robert Cotton Correctional Facility (JCF). Each of the remaining nine Defendants in this case is alleged to be employed at the MDOC's Parnall Correctional Facility (SMT). (DE 1 at 2-5, DE 9.)

1

However, of particular importance to the issue currently before the Court are Plaintiff's July 2018 transfers between Ojibway Correctional Facility (OCF) and Baraga Correctional Facility (AMF), each of which is located in Michigan's Upper Peninsula.

**B.     Instant Matter**

Judge Drain has referred this case to me, most recently for all pretrial proceedings. (DE 53.) Currently pending before the Court is Plaintiff's verified August 15, 2018 "motion to sanction and disqualify [the] Attorney General," which Plaintiff filed during his incarceration at AMF. (DE 35.) Defendants have filed a response (DE 38).

**C.     Discussion**

In considering this motion, the Court has attempted to discern each of Plaintiff's concerns therein, some of which relate to the motion's title and some of which do not.

>  **1.     The Court will not sanction the Attorney General (AG) or disqualify the AG from representing the MDOC Defendants in this matter.**
>
>  >  **a.     The Court is not convinced that the AG played a role in Plaintiff's initial, July 16, 2018 transfer to OCF.**

On July 5, 2018, Plaintiff filed a motion to supplement his complaint by adding Defendant B. Doss, an ARUS at JCF. (DE 29 at 8.) According to Plaintiff,

Doss told him that "the Attorney General ordered [his] transfer[.]" (DE 35 ¶ 1.) It appears that Plaintiff was transferred from JCF to OCF on July 16, 2018. (DE 31, DE 36 ¶ 95.) Similarly, Plaintiff claims that, upon arrival at OCF - presumably his initial, July 16, 2018 transfer to OCF (*see* DE 36 ¶ 95, DE 38-5 at 3) – ARUS Loop "told [Plaintiff] that 'the Attorney General ordered [his] transfer so that we can put a stop to all [his] legal games[.]'" (DE 35 at 1 ¶ 2.)

Plaintiff's proposed hybrid complaint describes an alleged June 2018 conversation between T. Kisor, ARUS Michelle Parsons, and Assistant Attorney General (AAG) Briggs. (*See* DE 36 at 42-43 ¶¶ 89-90). Nonetheless, the Court is not convinced that the Michigan's Attorney General was involved in Plaintiff's July 16, 2018 initial transfer to OCF. First, AAG Briggs responds that she "had no involvement in any decision regarding Goldman's transfer." (DE 38 at 2.) Second, AAG Briggs attaches the affidavits of JCF ARUS Michelle Parsons and JCF ADW Tiffani Kisor, each of whom attests that "AAG Briggs was not involved in any aspect of Goldman's transfer." (DE 38-2 ¶¶ 2, 5; DE 38-3 ¶¶ 2, 7). Third, Parsons and Kisor each attest that "I never met AAG Husa Briggs and, in fact, the first correspondence I had from her was in connection with this affidavit." (DE 38-2 ¶ 4, DE 38-3 ¶ 6.) Fourth, AAG Briggs attaches the affidavit of OCF ARUS Deborah Loop, who likewise attests:

> The first correspondence I had with Elizabeth Husa Briggs, the [AAG] assigned to this case, was the request I received from her on or around August 22, 2018, to provide this affidavit. I have never met her in person.

(DE 38-4 ¶¶ 1, 7). Notably, Ms. Husa Briggs was just replaced as counsel of record in this case by Assistant Attorney General Michael R. Dean, so this motion may well be moot. (DE 57.)

Finally, to the extent that Plaintiff's motion implies the involvement of Michigan Attorney General Bill Schuette, it does not appear that the MDOC is within the AG's chain of command, as the Michigan Department of Attorney General's organizational chart does not list the Michigan Department of Corrections (MDOC).[1] Instead, the MDOC Director reports to Michigan's governor.[2] Thus, to the extent Plaintiff contends that the AG improperly influenced his transfers, the Court will not sanction the AG or disqualify the AG from this case.

### b. The Court is not convinced that Plaintiff's transfers between OCF and AMF were punitive in nature.

---

[1] *See* https://www.michigan.gov/documents/ag/Dept_Org_Chart_373061_7.pdf (last visited Nov. 20, 2018).

[2] *See* https://www.michigan.gov/documents/corrections/MDOC_Org_Chart_2017_608918_7.pdf (last visited Nov. 20, 2018).

Plaintiff claims he was transferred from Level I to Level V overnight, which seems to be a reference to his transfer(s) to AMF. (DE 35 ¶ 3, DE 38-5 at 2, 4.) In Plaintiff's opinion, the transfer(s) and 3 false and fabricated tickets were "in retaliation for [his] writing grievances at OCF[.]" (DE 35 ¶ 3.) Plaintiff claims that, at AMF, he is being denied "life's essentials" and "due process of law," and is the victim of "inhumane treatment, and torture." (*Id.*)

As an initial matter, even though Loop attests that OCF staff wrote Plaintiff a ticket on July 19, 2018 "for contraband confiscated at pack-up . . . [,]" (DE 38-4 at 7 ¶ 12), Plaintiff does not attach any detail about the allegedly false and fabricated tickets to which he intended to draw the Court's attention. Thus, the Court is not in a position to assess the veracity of Plaintiff's statement about the tickets. Perhaps more importantly, the MDOC Defendants have provided copies of three July 2018 transfer orders, each of which offers an explanation for Plaintiff's July 2018 transfers between OCF and AMF. On July 19, 2018 and again on July 26, 2018, Plaintiff was transferred to AMF seemingly to accommodate his "mental health needs/suicide constant observation." (DE 38-5 at 2, 4; *see also* DE 38 at 4.) In addition, the in-between July 25, 2018 transfer from AMF to OCF explains that an AMF Qualified Mental Health Professional (QMHP) "has released inmate from constant obs[eration] status." (DE 38-5 at 3.) Thus, the July 2018 transfers

between OCF and AMF do not appear to have been punitive in nature, and the Court will not sanction or disqualify the AG on this basis.

### c. Ordinarily, the Court should not second-guess prison administrators' transfer decisions.

"Because the realities of running a penal institution are complex and difficult," the Supreme Court has "recognized the wide-ranging deference to be accorded the decisions of prison administrators." *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977). *See also Leibowitz v. U.S., Dep't of Justice, Bureau of Prisons*, 729 F. Supp. 556, 563 n.4 (E.D. Mich. 1989) (Cohn, J.) ("the discretion of prison officials over transfer, assignment, and classification of prisoners is plenary and the courts may not second guess them.") (citing, *e.g.*, *Meachum v. Fano,* 427 U.S. 215 (1976)), *aff'd sub nom. Leibowitz v. United States*, 914 F.2d 256 (6th Cir. 1990).

### d. Plaintiff has not established a conflict of interest for the AG.

In Plaintiff's words, his complaint alleges that "particular Defendants committed fraud and forgery of [his] name and MDOC documents, a felony under Michigan law [Mich. Comp. Laws § 750.248] . . . ." (DE 35 at 3 ¶ 4.) Therefore, Plaintiff contends, the AG cannot simultaneously represent them and prosecute them. (*Id*. at 4 ¶ 4.)

However, even if Plaintiff *alleges* in the original complaint that Defendants violated Section 750.248, this statute "does not explicitly authorize a private cause of action." *Langley v. Chase Home Fin., LLC*, No. 1:10-CV-604, 2011 WL 1150772, at *6 (W.D. Mich. Mar. 11, 2011), *report and recommendation adopted*, No. 1:10-CV-604, 2011 WL 1130926 (W.D. Mich. Mar. 28, 2011); *see also Am. Postal Workers Union, AFL-CIO, Detroit Local v. Indep. Postal Sys. of Am., Inc.*, 481 F.2d 90, 93 (6th Cir. 1973) ("the general rule is that a private right of action is not maintainable under a criminal statute."); *Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.*, No. 05-CV-73709-DT, 2007 WL 2710113, at *9 (E.D. Mich. Sept. 13, 2007) (quoting *Am. Postal Workers Union* in its discussion of Mich. Comp. Laws §§ 750.356 and 750.174). Moreover, Plaintiff does not offer any authority for his claim that such a charge would be prosecuted by the Michigan Attorney General, as opposed to (in the case of an SMT Defendant) the Jackson County Prosecutor. Thus, the Court will not sanction or disqualify the AG on the basis of a conflict of interest.

### 2. The Court is not in a position to order a non-party MDOC official at OCF or AMF to provide Plaintiff with certain property.

Plaintiff claims that MDOC staff is "working together with the [AG] by depriving [him] of, and possibly destroying[,] ALL of [his] property[.]" (DE 35 ¶ 3.) Plaintiff claims that his property – including case work, evidence, transcripts

and "court documents related to pending cases," "ALL of [his] clothes," and hygiene products, to name a few – has not been returned to him since July 19, 2018, *i.e.*, 18 days as of the date that he signed his motion. (DE 35 ¶ 3.) Stated otherwise, Plaintiff claims he has been without his property since his July 19, 2018 transfer from OCF to AMF, though his July 25, 2018 transfer from AMF to OCF, and through his July 26, 2016 transfer from OCF to AMF. (DE 38-5.)

Preliminarily, the MDOC Defendants have provided a plausible explanation for the removal of Plaintiff's television. On July 17, 2018, while at OCF, C/O Perttu issued a notice of intent to conduct an administrative hearing regarding "property disposition / hobby craft." According to Perttu, Plaintiff "rode into OCF with an altered TV," with the "numbers sanded out[,]" and "stated that he bought it off the yard" from another prisoner. ARUS Loop conducted a hearing on July 19, 2018, at which time she determined that the television would be destroyed in accordance with MDOC PD 04.07.112 ("Prisoner Personal Property"). (*See* DE 38-4 at 10-11.)

Also, Loop attests that she has "no personal knowledge of any clothing or hygiene items that Goldman was in need of between July 16, 2018 and July 19, 2018 - the days he was housed in the D-unit to which [she] was assigned." (DE 38-4 ¶ 10.) According to Loop, Plaintiff "did not inform [her] of an issue here, nor did he request an indigent package from me." (*Id.*) Moreover, Loop attests:

> The only property confiscated from Goldman that I had involvement
> with was a television which was discovered to have been altered when
> it arrived at OCF's property room. On July 17, 2018, the property
> room sent me the television with a request to conduct an
> administrative hearing on the Notice of Intent (NOI) issued to
> Goldman in connection with securing this from the prisoner.
> Attachment A contains a true and correct copy of the NOI, as well as
> the administrative hearing record conducted in connection therewith.
> The hearing was held on July 19, 2018, and Goldman was present at
> it. The television was available and inspected at the hearing. It was
> obviously altered because the original number was scratched from it
> and Goldman's number (# 542675) was etched into the side and top.
> Goldman threatened to sue me, stating that the television had been
> given to him by another inmate at a prior facility. I informed
> Goldman that pursuant to MDOC Policy Directive 04.07.112, the
> television was contraband because testimony and other evidence
> presented at the hearing demonstrated that Goldman did not purchase
> the television, but he altered it by placing his prison number on it.
> MDOC policy does not permit prisoners to give personal property to
> another prisoner. I informed him that the television would be
> destroyed pursuant to P.D. 04.07.112. He again threatened me with a
> lawsuit.

(DE 38-4 ¶ 11.)

Finally, as to Plaintiff's case work, evidence, transcripts and court documents, and to the extent Plaintiff seeks return of other forms of property from an official at *AMF*, which was his location at the time he filed the instant motion, I note that Plaintiff is currently housed at the Alger Correctional Facility (LMF), where it appears he has been since approximately October 31, 2018. (DE 52.).[3] Therefore, while Plaintiff claims in his August 2018 motion that he has been

---

[3] *See also* www.michigan.gov/corrections, "Offender Search."

without his property for 18 days (*see* DE 35 ¶ 3), and while he requests that the Court "order return of [his] legal case work and other property[,]" (DE 35 at 4), the Court is not in a position to order a non-party MDOC official at OCF or AMF to provide Plaintiff with certain property. Moreover, in another filing, Plaintiff claims he "finally received [his] property . . ." on August 7, 2018. (*See* DE 56 at 10.)

### 3. Nor is the Court in a position to order OCF ARUS Loop, a non-party, to provide Plaintiff with legal supplies.

Plaintiff claims that, upon arrival at OCF (presumably his initial, July 16, 2018 transfer to OCF), ARUS Loop: **(a)** "denied paper to write legal documents," despite Plaintiff's indigency; and, **(b)** "forced [Plaintiff] to have to write on toilet paper . . . ." (DE 35 at 2 ¶ 2.) In contrast to Plaintiff's verified motion, OCF ARUS Deborah Loop attests that:

> On July 17, 2018, Goldman came to my office at approximately 9:20 a.m. for the purpose of conducting a PREA Assault and Victim interview regarding allegations he had made. He inquired as to how he could obtain legal supplies at that time. I did not deny him paper, but instead, provided him with approximately twenty (20) sheets of paper and ten (10) envelopes because he had recently arrived at OCF and had not yet received his property. I informed him that -in the future-he would need to complete a disbursement form and purchase envelopes from me, and that scrap paper is kept at the officer desk for inmates to use.

(DE 38-4 ¶ 4.) To the extent Plaintiff requests that *OCF* ARUS Loop provide him with paper for his legal work, it has been rendered moot, as he is currently located

at *LMF*.[4]  Notably, Plaintiff's most recent filings with this Court exhibit that he is well-supplied with paper.  (*See* DEs 52, 56.)

## II. ORDER

For the reasons stated above, Plaintiff's motion to sanction and disqualify the Attorney General (DE 35) is **DENIED**.[5]  Moreover, given that each of the remaining nine Defendants in this case is alleged to be employed at the MDOC's Parnall Correctional Facility (SMT), and given that Plaintiff's current location is LMF, Plaintiff's above-described requests for relief – in the form of property and/or legal supplies – from non-party MDOC officials at OCF or AMF are **MOOT**.

Dated:  November 27, 2018            s/*Anthony P. Patti*
                                     Anthony P. Patti
                                     UNITED STATES MAGISTRATE JUDGE

---

[4] Moreover, Plaintiff makes a similar request in his October 31, 2018 emergency report (DE 50), which will be addressed under separate cover.

[5] To the extent Plaintiff mentions the alleged sexual assault by OCF transportation staff and MDOC staff "working to cover-up those crimes," (DE 35 ¶ 3), Plaintiff's "allegations of sexual assault" are the subject of his counsel's representation.  (*See* DE 49 at 2.)

11

**Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on November 27, 2018, electronically and/or by U.S. Mail.

s/Michael Williams  
Case Manager for the  
Honorable Anthony P. Patti