UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE ADAM GOLDMAN,

       Plaintiff

v.

LEE MCROBERTS,
MICHAEL DOSS,
ERICK VANDENBURG,
CHRISTOPHER WHITFORD,
SCOTT MCALLISTER,
JEROLD SCHNEIDER,
VERA CONERLY,
JAMIE BROCKWELL, and
RODNEY RICHARDSON,

       Defendants.
_____/

Case No. 2:17-cv-14093
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

## ORDER DENYING PLAINTIFF'S SEPTEMER 10, 2018 MOTION FOR AN EXPEDITED HEARING AND SERVICE OF A SUBPOENA (DE 41) and ADDRESSING THE REPLY BRIEF CONTAINED THEREIN

**I.   OPINION**

    **A.   Background**

Judge Drain has referred this case to me, most recently for all pretrial proceedings. (DE 53.) Plaintiff Lance Adam Goldman is currently in the custody of the Michigan Department of Corrections (MDOC), where he is serving a state-

court sentence imposed on March 8, 2016. *See* Case No. 150503-FH (Kalamazoo County), www.michigan.gov/corrections, "Offender Search."

By way of background, the MDOC has 31 correctional facilities, seven of which are located in Michigan's Upper Peninsula: (1) Ojibway Correctional Facility (OCF); (2) Baraga Correctional Facility (AMF); (3) Marquette Branch Prison (MBP); (4) Alger Correctional Facility (LMF); (5) Newberry Correctional Facility (NCF); (6) Chippewa Correctional Facility (URF); and, (7) Kinross Correctional Facility (KCF).[1] When Plaintiff filed this lawsuit on December 19, 2017, he was incarcerated at the G. Robert Cotton Correctional Facility (JCF), which is located in Michigan's Lower Peninsula. (DE 1 at 1.) It appears that on July 16, 2018, Plaintiff arrived at OCF. (DE 36 ¶¶ 45, 95.) It also appears that he has remained incarcerated within the Upper Peninsula since that time. (*See* DEs 31, 33, 38-5, 52.)

**B.   Prior Ruling**

On August 15, 2018, at which point Plaintiff was incarcerated at AMF, Plaintiff filed a verified "motion to sanction and disqualify [the] Attorney General." (DE 35.) In part, this motion was based upon Plaintiff allegedly having

---

[1] *See* https://www.michigan.gov/documents/corrections/MAP_CFA-REGIONS_AUG_24_2018_308644_7_630873_7.pdf (last visited Nov. 29, 2018).

been informed that the AG ordered Plaintiff's transfer to "put a stop to all [his] legal games[.]"  (DE 35 at 2 ¶ 2.)

Defendants filed a response on August 29, 2018, in which Assistant AG Husa Briggs stated that she "had no involvement in any decision regarding Goldman's transfer." (DE 38 at 2.)  Defendants further supported their motion by attaching the affidavits of ARUS Michelle Parsons of the JCF (DE 38-2), ADW Tiffany Kisor of JCF (DE 38-3), and ARUS Deborah Loop of OCF (DE 38-4), as well as several transfer orders (DE 38-5).

On or about November 6, 2018, Plaintiff was transferred to LMF, and this is his current location.  (DE 52; *see* www.michigan.gov/corrections, "Offender Search.").  Thereafter, on November 27, 2018, I entered an opinion and order denying Plaintiff's motion.  (DE 58.)  In concluding that "[t]he Court w[ould] not sanction the Attorney General (AG) or disqualify the AG from representing the MDOC Defendants in this matter[,]" I discussed how:

   a)   The Court is not convinced that the AG played a role in Plaintiff's initial, July 16, 2018 transfer to OCF, including mention of the fact that the AG's then-recent substitution of counsel may well have rendered moot Plaintiff's motion.

   b)   The Court is not convinced that Plaintiff's transfers between OCF and AMF were punitive in nature.

   c)   Ordinarily, the Court should not second-guess prison administrators' transfer decisions.

      d)      Plaintiff has not established a conflict of interest for the AG.

(DE 58 at 2-7.)

### C. Instant Matter

Unbeknownst to the Court at the time it issued its November 27, 2018 order (DE 58), Plaintiff had filed a reply. Specifically, on or about September 10, 2018, Plaintiff submitted **two** signed matters: **(1)** a September 5, 2018 motion, which requests an expedited hearing and service of a subpoena (DE 41 at 1-4); and **(2)** a verified September 6, 2018 reply to the MDOC Defendants' response (DE 41 at 5-20). These items were docketed as a single filing, apparently because they were accompanied by a single proof of service and arrived in a single envelope. (DE 41 at 21-22.)

Because these items were not docketed as a reply, the Court will now consider whether the matters therein alter the outcome of its November 27, 2018 order.

### D. Plaintiff's September 10, 2018 reply does not upend the Court's November 27, 2018 decision to deny Plaintiff's August 15, 2018 motion.

At its outset, Plaintiff's September 10, 2018 reply is labeled a "notice of fraud and perjury." (DE 41 at 5.) For the most part, the reply attacks the affidavits attached to Defendants' response. (*See* DE 41 at 6-14.) As the Court relied upon these affidavits throughout its November 27, 2018 discussion (DE 58 at 2-11), and

4

because the Court only recently became aware of the reply's existence, it will now consider whether the reply upends its November 27, 2018 decision.

### 1. Affidavit of OCF ARUS Loop (DE 38-4)

#### a. Background

Loop attests that Plaintiff was escorted to her office on July 17, 2018 "for the purpose of conducting a PREA Assault and Victim interview regarding allegations he had made." (DE 38-4 ¶ 4.) Loop further attests that, on the same date, "the property room sent [her] the television with a request to conduct an administrative hearing on the Notice of Intent (NOI) issued to Goldman in connection with securing this from [a] prisoner." (DE 38-4 ¶ 11.) Plaintiff signed the NOI that same day. (DE 38-4 at 11.)

Loop also attests that the following occurred on July 19, 2018: **(i)** Plaintiff was brought to her office for "mental health needs[,]" and, while Plaintiff did have "a piece of toilet paper in his hand at that time," she "did not notice if he had anything written on it[,]" (DE 38-4 ¶ 5); **(ii)** a hearing was conducted regarding the television "was held on July 19, 2018, and Goldman was present at it[,]" (DE 38-4 ¶ 11, DE 38-4 at 10); and, **(iii)** Plaintiff "rode out from OCF on July 19, 2018[,]" and "staff wrote a ticket . . . for contraband confiscated at pack-up on that date[,]" namely shoes and an altered radio. (DE 38-4 ¶ 12). More specifically, Plaintiff was transferred from OCF to AMF on July 19, 2018. (DE 38-5 at 2.)

### b. Analysis

Plaintiff claims that Loop's affidavit is perjurious. (DE 41 at 6 ¶ 2.) To begin, he claims he was not at OCF for the July 19, 2018 hearing and Loop falsified the hearing report. (*Id.*, DE 41 at 7-8 ¶ 2.) He also claims that the video camera "OCF-2414," which is allegedly located outside of Loop's office, will prove that: **(a)** no hearing was conducted; **(b)** no television was inspected while he was still at OCF on July 19, 2018; and **(c)** Loop was aware of the "toilet paper" motion that he put on her desk. (DE 41 at 6-8 ¶ 2.) Plaintiff also seems to argue that "OCF-2414" video camera evidence will show Loop and C.O. Huotari going through Plaintiff's "legal papers and property . . . ." (DE 41 at 8 ¶ 3.)

True, the Court's November 27, 2018 opinion and order relied upon Loop's affidavit. However, because Plaintiff's attacks upon Loop's affidavit seem limited to the events of July 19, 2018, they do not change the Court's reliance upon other portions of Loop's affidavit when considering whether the AG played a role in Plaintiff's initial, July 16, 2018 transfer to OCF. (DE 58 at 3-4, DE 38-4 ¶¶ 1, 7.) The same would be true of the Court's reliance upon Paragraph 4 of Loop's affidavit. (DE 58 at 10, DE 38-4 ¶ 4.) In addition, while Loop attests to her "understanding that [OCF] staff" wrote Plaintiff a ticket on July 19, 2018 "for contraband confiscated at pack-up . . . [,]" (DE 38-4 ¶ 12), and while Plaintiff claims she *knows* so based on her actions with C.O. Huotari (DE 41 at 8 ¶ 3), this

6

is not a material difference and the Court is still not convinced that Plaintiff's transfers between OCF and AMF were punitive in nature.

Finally, the Court cited Loop's affidavit and/or supporting documentation related to Plaintiff's clothing and hygiene between July 16, 2018 and July 19, 2018 (DE 38-4 ¶ 10) and the July 17, 2018 NOI and July 19, 2018 hearing report (DE 38-4 at 10-11, DE 38-4 ¶¶ 10-11). (DE 58 at 8-9.) Still, even assuming, *arguendo*, that Loop was dishonest in her description of the July 19, 2018 events, Loop is not a Defendant in this case, and it remains that the Court is not in a position to order a non-party MDOC official at OCF or AMF to provide Plaintiff with certain property. In sum, Plaintiff's challenges to the veracity of Loop's affidavit do not undermine the Court's November 27, 2018 conclusions.

### c. Moreover, Plaintiff's September 10, 2018 motion for an expedited hearing and service of a subpoena is denied.

Plaintiff claims that Kisor and Loop told him that the AG's Office "ordered [his] transfer to hinder [his] case work and endeavors[.]" (DE 41 at 13.) Plaintiff submits a copy of a subpoena, which is directed to the MDOC and seeks "[OCF] video camera recordings of camera # 'OCF-2414' located in D-Unit Lobby, for the date of July 19, 2018, 6 a.m. thru 11:59 p.m." (DE 41 at 2; *see also* DE 41 at 9 ¶

4.)[2] Plaintiff seeks this information "to prove [his] claims of fraud on the Court and perjury," and contends that "[a] delay could result in loss, or destruction of crucial and relevant video evidence." (DE 41 at 1.) According to Plaintiff, the video evidence from OCF-2414 (the camera outside of Deborah Loop's office) dated July 19, 2018 "will 100% without a doubt prove that Deborah Loop has committed perjury, and that AAG Husa Briggs has aided, abetted, and encouraged perjury, crimes, and fraud, against policy and rules." (DE 41 at 14.)

Perhaps Plaintiff's sense of urgency results from the fact that OCF was scheduled to be closed on December 1, 2018.[3] To complicate matters, although the subpoena is dated August 16, 2018 and signed by the Clerk's Office, it is not clear whether Plaintiff has served this subpoena upon MDOC Headquarters. (DE 41 at 2; *see also* DE 41 at 20.) Nonetheless, to the extent Plaintiff is asking the Court to serve this subpoena for him, the Court is not convinced that Plaintiff is unable to do so himself as set forth in Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person "). *See Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *4 (E.D. Mich. Dec. 10, 2008) (Roberts, J.) ("This

---

[2] Plaintiff also claims to have subpoenaed Loop's computer logs (DE 41 at 9 ¶ 4); however, this subpoena does not appear to be at issue in Plaintiff's September 10, 2018 reply.

[3] *See* https://www.michigan.gov/corrections/0,4551,7-119-68854_1381_1385-5327--,00.html.

Court agrees that hand delivery is not required by Rule 45 and that certified mail may assure proper delivery."); *but see Roofers Local 149 Sec. Benefit Tr. Fund v. Milbrand Roofing Grp., Inc.*, No. 05-CV-60218, 2007 WL 2421479, at *1 (E.D. Mich. Aug. 22, 2007) (Pepe, M.J.) ("Rule 45(b)(1) specifically requires personal service on a non-party . . . .").

Also, to the extent Plaintiff is asking the Court to conduct an expedited hearing so that he can prove claims of fraud and perjury as set forth in his reply, the Court has already concluded that the reply does not upend the Court's November 27, 2018 decision to deny Plaintiff's August 15, 2018 motion. Therefore, the Court will not grant Plaintiff's request for an evidentiary hearing to prove his claims of "perjury and fraud on the Court, by AAG Husa Briggs." (DE 41 at 15, 14.)

Finally, to the extent Plaintiff attempts to bring a motion to compel the product of OCF video camera "OCF-2414" evidence (*see* DE 41 at 5, 14), he must first serve an appropriate discovery request, such as a Fed. R. Civ. P. 34 request for production, after which he should comply with E.D. Mich. LR 37.2 ("Form of Discovery Motions"). In sum, the Court will not "order production of [OCF] video camera evidence from camera number "OCF-2414" for July 19, 2018[.]" (DE 41 at 15.)

### 2. Affidavit of JCF ARUS Parsons (DE 38-2)

### a. Background

The exhibits to Plaintiff's September 10, 2018 reply provide some additional factual background of which the Court was unaware at the time it issued its November 27, 2018 decision. To begin, Plaintiff provides a copy of Britanica N. Doss's MDOC "Security Classification Screen – Review," which was entered on June 26, 2018, apparently in preparation for Plaintiff's transfer from JCF. (DE 41 at 19.) It assessed Plaintiff's New Score as 9 points and his New Management Level as II (*i.e.*, 7 – 14 points). (*Id.*) In arriving at this number, the assessor listed the "[n]umber of six month periods completed without any class I-II misconducts or administrative segregation or convictions[,]" each of which would have been worth 6 points, as zero. (*Id.*)

On June 28, 2018, Plaintiff completed a Step I grievance (JCF-18-07-01485-21c) in which he complains, *inter alia*, that he has been "demoted and reclassified to Level II only days prior to being 6-months ticket free so as to circumvent the requirement of deduction of 6 points from [his] total points which would give [him] a true point total of 3 points[,]" *i.e.*, Level I's range of 0 – 6 points. (DE 41 at 17, 19.) Plaintiff's grievance also alleges that ARUS B. Doss was involved in his retaliatory transfer to "a new Level II facility . . . ." (DE 41 at 17.)

Plaintiff's grievance was received at Step I on July 2, 2018. (*Id.*)[4] The July 9, 2018 Step I grievance response explains that Plaintiff "will be eligible to be rescreened if he goes ticket free after July 28, 2018[,]" and "has also been informed that policy allows staff to make placement determination." (DE 41 at 17.) Meanwhile, in Plaintiff's July 5, 2018 motion to supplement his complaint, Plaintiff sought to add JCF ARUS B. Doss as a Defendant. (DE 29 at 8.)

### b. Analysis

Parsons's August 23, 2018 affidavit comments upon certain paragraphs of Plaintiff's August 20, 2018 proposed hybrid complaint. (*See* DE 36 ¶¶ 89-90, DE 38-2 ¶¶ 4-5.) In his September 10, 2018 reply, Plaintiff seems to attack Parsons's affidavit, as Plaintiff claims he "never alleged that 'Michelle Parsons' said anything about AAG Husa Briggs[.]" (DE 41 at 9 ¶ 5.) However, even though the Court's November 27, 2018 opinion and order relied upon Parsons's affidavit, it

---

[4] When describing its correctional facilities, the MDOC lists security levels. *See* www.michigan.gov/corrections. On July 2, 2018, Brian Johnsen approved a True Security Level of I and an actual placement level of I. (DE 41 at 19.) Johnsen's reason for the departure was that Plaintiff "can be managed in reduced custody security level." (*Id.*) Plaintiff claims he arrived at OCF on July 16, 2018, although Plaintiff does so in a proposed but inoperative pleading. (DE 36 ¶ 95.) During July 2018, Plaintiff transferred between OCF (a Secure Level I facility), and AMF (Levels I and V). (DE 38-5 at 2-4.) On the occasions that he was transferred to AMF, he was classified as Level V, presumably for "mental health needs/suicide constant observation." (DE 38-5 at 2, 4.) He appears to have been at AMF as late as October 2018. (DE 50). As noted above, he was transferred to LMF (Levels II and IV) on or about November 6, 2018. (DE 52.)

11

did so to combat the idea that "*the AG* played a role in Plaintiff's initial, July 16, 2018 transfer to OCF[,]" i.e., Parsons's affidavit was not cited to dispute what Parsons did or did not say. (*See* DE 58 at 2-3 (emphasis added), DE 38-2 ¶¶ 2, 4, 5.)

Perhaps more importantly, this portion of Plaintiff's reply seeks to clarify that it was *ARUS B. Doss* who told Plaintiff that (i) AAG Husa Briggs asked to have Plaintiff's transferred; and, (ii) Plaintiff was "put in for transfer on June 26, 2018." (DE 41 at 9.) Presumably referring to his June 28, 2018 grievance and/or his July 5, 2018 motion to supplement (DE 29 at 8), Plaintiff claims that he made this allegation *before* his July 16, 2018 transfer from JCF to OCF. (*Id.*) According to Plaintiff, prisoners "are not supposed to be told about transfers prior to being transferred . . . [,]" which lends support to his claim that B. Doss told Plaintiff he was being transferred because he was suing Captain Michael Doss (a current defendant in this case) and the AG's Office ordered Plaintiff's transfer. (DE 41 at 9-11 ¶ 6.) Then, Plaintiff questions why AAG Briggs did not obtain an affidavit from B. Doss. (DE 41 at 11 ¶ 6). Still, to the extent any of this reply concerns Plaintiff's pursuit of a claim against B. Doss, this individual is not a current Defendant and Plaintiff's various attempts to supplement and/or amend his complaint were addressed by the Court on September 24, 2018 (*see* DE 43).

In sum, notwithstanding Plaintiff's attack on Parsons's affidavit or Plaintiff's argument about the retaliatory nature of his transfer, the Court remains unconvinced that "the AG played a role in Plaintiff's initial, July 16, 2018 transfer to OCF." (DE 58 at 2.)

### 3. Affidavit of JCF ADW Kisor (DE 38-3)

To be sure, the Court's November 27, 2018 order observed that "Plaintiff does not attach any detail about the allegedly false and fabricated tickets to which he intended to draw the Court's attention." (DE 58 at 5.) Plaintiff's newly-discovered reply sheds some light on this subject. Specifically, Plaintiff points out that:

- on June 14, 2018, Hatatu Elum issued Plaintiff a Class II misconduct report for creating a disturbance and being out of place on June 13, 2018 at JCF. (DE 27 at 34, DE 30 at 5, DE 36 at 86; *see also* DE 28 at 5.)

- on June 26, 2018, Hearing Officer Losacco found Plaintiff "not guilty" of these charges. (DE 38 at 7.)

- on July 5, 2018, Plaintiff completed a Step I grievance in which he complained that Law Librarian Hatatu Elum "continues to retaliate against me for my having submitted past grievances and complaints against her and the library[.]" (DE 36 at 90 [JCF-18-07-01519-17b]).

- on July 10, 2018, ADW T. Kisor responded in part that "Prisoner continues to belittle Librarian Elum[,] calling her a liar & being nasty towards prisoners." (*Id.*)

13

(DE 41 at 12-13.)

In response to certain paragraphs of Plaintiff's August 20, 2018 proposed hybrid complaint (DE 36 ¶¶ 85-87), Kisor mentions, *inter alia*, her response to JCF-18-07-01519-17b. (*See* DE 38-3 ¶ 4.) In his September 10, 2018 reply, Plaintiff claims that this paragraph of Kisor's affidavit is perjurious. (DE 41 at 12-13 ¶ 7.) However, even though the Court's November 27, 2018 opinion and order relied upon Kisor's affidavit, it did so as to different paragraphs. (*See* DE 58 at 3, DE 38-3 ¶¶ 2, 6, 7.)

### E.  Conclusion

In the end, Plaintiff admits that he "was erroneously informed that a short, blondish-haired, older woman was 'A.G. Briggs' while in the Law Library, who met with Parsons and Kisor." (DE 41 at 11.) This is consistent with Assistant AG Husa Briggs representation that she "had no involvement in any decision regarding Goldman's transfer." (DE 38 at 2.) Moreover, for the reasons stated in its November 27, 2018 opinion and order (DE 58), and because the Plaintiff's newly-discovered reply does not upend that decision, the Court will not revise its November 27, 2018 decision (DE 58) to deny Plaintiff's motion to sanction and disqualify the Attorney General (DE 35). Likewise, the Court will not grant Plaintiff's September 10, 2018 request to "disqualify AAG Husa Briggs and [the] Attorney General's Office[.]" (DE 41 at 15.)

## II. ORDER

For the reasons stated above, the Court concludes that Plaintiff's reply (DE 41 at 5-20) does not upend the Court's November 27, 2018 decision (DE 58) to deny Plaintiff's August 15, 2018 motion (DE 35).  Moreover, Plaintiff's September 10, 2018 motion for an expedited hearing and service of a subpoena (DE 41 at 1-4) is **DENIED**.


Dated:  December 18, 2018                 s/*Anthony P. Patti*
                                                 Anthony P. Patti
                                                 UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 18, 2018, electronically and/or by U.S. Mail.

                                                 s/Michael Williams
                                                 Case Manager for the
                                                 Honorable Anthony P. Patti