UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANCE ADAM GOLDMAN,

    Plaintiff

v.

LEE MCROBERTS,
MICHAEL DOSS,
ERICK VANDENBURG,
CHRISTOPHER WHITFORD,
SCOTT MCALLISTER,
JEROLD SCHNEIDER,
VERA CONERLY,
JAMIE BROCKWELL, and
RODNEY RICHARDSON,

    Defendants.
_____/

Case No. 2:17-cv-14093
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

**OPINION AND ORDER DENYING SEVERAL OF PLAINTIFF'S MOTIONS (DEs 70, 71, 72, 73, 74, 84, 88, 89, 91, 95) and PLACING RESTRICTIONS ON PLAINTIFF'S FUTURE FILINGS**

**I.    OPINION**

Plaintiff is currently in the custody of the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF), which is located in Jackson County and within the Eastern District of Michigan.[1] However,

---

[1] *See* www.michigan.gov/corrections, "Offender Search," (last visited Apr. 4, 2019).

1

as recently as March 22, 2019, the post-marked date of his most recent filing in this lawsuit, Plaintiff was incarcerated at the MDOC's Chippewa Correctional Facility (URF), which is located in Chippewa County in Michigan's Upper Peninsula, all of which is within the Western District of Michigan. (*See* DE 95 at 9.)

### A. Plaintiff is a party to multiple other lawsuits.

Plaintiff is no stranger to Michigan's federal courts. In addition to the instant case, he has filed other lawsuits in the Eastern District of Michigan. *See, e.g., Goldman v. Michigan, State of et al* (Case No. 2:18-cv-11666-GCS-PTM) (4 Defendants, summarily dismissed on July 17, 2018); *Goldman v. Horton* (Case No. 2:19-cv-10160-BAF-DRG) (petition for writ of habeas corpus, transferred to the W.D. Mich. on Feb. 5, 2019); *Goldman v. Elum et al* (Case No. 2:19-cv-10390-GAD-SDD) (22 Defendants, several pending matters including an application to proceed without prepaying fees or costs).[2]

Plaintiff is / was also a party to several cases in the U.S. District Court for the Western District of Michigan.[3] Among these cases, it is worth noting Judge

---

[2] Plaintiff was also a party to *Rouse et al v. Michigan, State of et al*, Case No. 2:17-cv-12276-DPH-DRG (E.D. Mich.) (case filed on July 6, 2017, judgment entered on Oct. 25, 2017).

[3] *See Goldman #542675 v. Barrett*, Case No. 1:2016cv01393 (filed Dec. 5, 2016); *Goldman #542675 v. Barrett*, Case No. 1:2017cv00506 (filed June 5, 2017); *Goldman #542675 v. Bridenstein*, Case No. 2:2018cv00143 (filed Aug. 23, 2018); *Goldman #542675 v. Consumers Credit Union et al*, Case No. 1:2016cv01372

Quist's January 7, 2019 order, which states, in part: "<u>Plaintiff is barred from proceeding in forma pauperis under 28 U.S.C. § 1915(g) because he has, on 3 or more prior occasions, while incarcerated, brought an action in federal court that was dismissed on the ground that it was frivolous, malicious, or failed to state a claim upon which relief might be granted</u>." *Goldman #542675 v. Bridenstein*, Case No. 2:2018cv00143 (W.D. Mich.) (DE 11) (emphasis added).

    **B.    The Instant Lawsuit involves Parnall Correctional Facility (SMT) Defendants.**

Plaintiff filed this lawsuit on December 19, 2017 against 17 Defendants. (DE 1 at 2-5.) On March 26, 2018, the Court dismissed Plaintiff's claims against eight of the named Defendants. (DE 9.) Each of the remaining nine Defendants is alleged to be employed at SMT, which is located in Jackson County and in a portion of Michigan's Lower Peninsula that is within the Eastern District of Michigan. (DE 1 at 2-5.)[4] Plaintiff alleges he was transferred to SMT on June 26, 2017. (DE 1 ¶ 4.) His claims regarding his conditions of confinement there appear

---

(filed Nov. 28, 2016); *Goldman #542675 v. Horton*, Case No. 2:2019cv00036 (transferred from the E.D. Mich. Feb. 6, 2019, transferred to the Sixth Circuit on Feb. 22, 2019); *Goldman #542675 v. Kalamazoo County Jail et al*, Case No. 1:2016cv00359 (filed Apr. 7, 2016); and *Goldman #542675 v. Michigan, State of et al*, Case No. 1:2017cv00774 (filed Aug. 24, 2017).

[4] The original complaint remains the operative pleading, as Plaintiff's various motions to amend and/or supplement (DEs 15, 27, 28, 29, 36) were denied without prejudice. (DE 43; *see also* DEs 59, 68.)

to begin with Defendant Vandenburg's alleged July 2017 finding that Plaintiff was guilty of a Class II misconduct issued at Cooper Street Correctional Facility (JCS) on the date of Plaintiff's transfer to SMT. (*See* DE 1 at 6-18, 28-87.)

### C. Ten (10) Motions are Pending in this Case.

Judge Drain has referred the instant case to me for all pretrial proceedings. (DE 53.) Plaintiff is a high-volume filer, and the Undersigned has already issued a multitude of orders, as well as one report and recommendation, to keep up with Plaintiff's myriad requests. *See*, *e.g.*, DEs 11, 43, 44, 47, 49, 58, 59, 65, 69. Moreover, on two separate occasions, I have stricken Plaintiff's letters. (*See* DEs 56, 63.)

#### 1. Motions as to which the Court has ordered a response

At the present moment, there are 10 pending matters, among which are:

- Plaintiff's February 11, 2019 motion for injunctive order (DE 70)

- Plaintiff's February 15, 2019 supplemental emergency report and motion for injunctive/protective order (DE 71)

- Plaintiff's February 15, 2019 motion to expedite attached emergency report (DE 72)

- Plaintiff's February 19, 2019 verified motion to supplement supplemental motion for injunctive/declaratory relief (DE 73)

- Plaintiff's February 21, 2019 verified motion to supplement supplemental motion for injunctive/protective order (DE 74)

Plaintiff has also filed several items which are not titled as motions, such as his February 22, 2019 "memorandum in support of motion for injunctive/protective order" (DE 75), a February 25, 2019 "supplemental report" (DE 78), a February 25, 2019 "supplemental report (memo)" (DE 79), and a March 8, 2019 "(verified) emergency PREA [Prison Rape Elimination Act] report in support of motion for injunctive relief" (DE 83).[5]

At the Court's direction, the MDOC filed a combined response to the five, above-described motions. (DE 90; *see also* DEs 76, 77.)

### 2. Motions as to which the Court has not ordered a response

Meanwhile, Plaintiff has filed an additional four motions:

- A "motion for protective/injunctive order," dated March 8, 2019 and filed March 13, 2019 (DE 84)

- A "notice and motion for injunctive order and/or declaratory relief," dated March 13-14, 2019 and filed March 20, 2019 (DE 88),

- A "motion for appropriate relief," dated March 18, 2019 and filed on March 21, 2019 (DE 89),

---

[5] Plaintiff completed PREA Step I Prisoner Grievance Forms on February 26, 2019 and February 28, 2019, each of which was denied because it contained issues other than sexual abuse. (DE 83 at 10-15.) He completed another PREA Step I Prisoner Grievance Form on March 1, 2019, the response for which is dated March 8, 2019. (DE 83 at 20, DE 91 at 7-8.)

5

- A "motion to supplement and supplemental emergency PREA report," dated March 20, 2019 and filed March 25, 2019 (DE 91)

- A "motion for order of appropriate relief," dated March 21, 2019 and filed on April 1, 2019 (DE 95)

In addition, Plaintiff has also filed several items which are not titled as motions, such as "verified exhibits in support of pending motions," (DE 85), a "notice (request for hearing)" (DE 86), exhibits in support of his supplemented emergency PREA report (DE 92), and two unattached additional exhibits, which are a photograph of some shower shoes and a handwritten letter, purportedly from his mother (DE 93).

### D. Discussion

#### 1. Attachments to Plaintiffs filings enlighten the Court about the months preceding Plaintiff's currently pending motions.

Plaintiff claims to have seen the Parole Board on December 21, 2018. (DE 71 at 3 ¶ 6, DE 73 at 4 ¶ 11.) On February 1, 2019, the Michigan Parole Board projected Plaintiff's parole date as February 28, 2019. (DE 75 at 8-10.) The Notice of Decision provided that "*[m]isconduct, security reclassification or other adverse information may result in suspension of this parole action*[.]" (DE 75 at 10 (emphasis added).)

On February 4, 2019, Plaintiff completed URF-19-02-0388-28I, wherein he claimed to be a Level 2 prisoner who has been housed in Levels 4 and 5. (DE 71 at 29.) It was rejected on February 6, 2019, allegedly because he had not yet attempted to resolve his issue with the staff member involved. (DE 71 at 30.) On February 6, 2019, J. Benson issued Plaintiff a Class I misconduct report for possession of dangerous contraband, which was described as an incendiary device. (DE 71 at 20-21.) On February 11, 2019, Greenleaf issued Plaintiff a Class I misconduct report for possession of a weapon, which was described as "1 screw fastened between 2 toothbrushes to make a weapon[,]" and, on February 12, 2019, Greenleaf completed a Hearing Questionnaire. (DE 73 at 14-15; *see also* DE 85 at 8, 14.) Although it is not clear how the prior ticket was adjudicated, on February 13, 2019, Hearing Officer O'Brien found Plaintiff guilty of the possession of a weapon charge, for which he received 10 days of detention and 30 days loss of privileges. (DE 74 at 10.).

Meanwhile, Plaintiff completed several other grievances, some of which allege the denial of food. (DE 71 at 22, 24, 26, 37.) On February 11, 2019, Plaintiff completed a health care request, which he marked "urgent," and which alleged, in part, that round unit officers "have not allowed me to go eat nor eat 'in-unit,' since [February 6, 2019][.]" (DE 71 at 35.)

7

## 2. Plaintiff's 10 pending motions, filed February 11, 2019 through April 1, 2019, do not concern the conditions of confinement at SMT.

Plaintiff was incarcerated at URF when he filed each of the 10 currently pending motions:

- Plaintiff's "motion for injunctive order," dated February 5, 2019, seeks entry of an injunctive order by which the MDOC "will take measures to prevent further injury/bodily assault(s) from reoccurring against Plaintiff." (DE 70 at 1.) Among other things, Plaintiff claims he "is in imminent danger while housed at any facility in the Upper Peninsula . . ., because he reported being raped while in the U.P. . . ." (DE 70 at 6 ¶ 14.) In his prayer for injunctive relief, Plaintiff seeks "safety and freedom from further assaults/retaliation." (DE 70 at 7.) In a separate filing, Plaintiff attaches an MDOC disbursement authorization form, seemingly to substantiate that he mailed this motion on February 6, 2019. (*See* DE 71 at 1 ¶ 1, DE 71 at 18.)

- Plaintiff's "emergency report and motion for injunctive / protective order" seeks to supplement his "recent motion for injunctive order" and seems to concern the events of February 6, 2019 through February 10, 2019. (DE 71 at 1-15.) Plaintiff's prayer for relief seeks the entry of an injunctive/protective order and an order requiring an investigation into the actions of Round Unit, Level 4 staff at URF. (DE 71 at 16.) Also, Plaintiff claims he is being starved. (DE 71 at 38.) Plaintiff appears to verify this emergency report in a concurrent filing. (*See* DE 72 at 1.)

- Plaintiff's "motion to expedite attached emergency report . . .[,]" succinctly alleges that he is "being starved by URF level 4 staff[,]" and that he has "kept a complete, accurate record which can all be verified." (DE 72 at 1.)

- Plaintiff's verified "motion to supplement supplemental motion for injunctive/declaratory relief" appears intended to inform the Court

8

of the alleged events of February 11, 2019 and February 12, 2019. (DE 73 at 1-12.)

- Plaintiff's "motion to supplement supplemental motion for injunctive/protective order" mentions various things, including the February 11, 2019 Class I Misconduct for Possession of a Weapon, the alleged events of February 12, 2019, the February 13, 2019 hearing disposition, and the alleged events of February 14-15, 2019. (DE 74 at 1-8; *see also* DE 74 at 10.)

- Plaintiff's "motion for protective/injunctive order" concerns, *inter alia*, access to URF law library materials, access to legal supplies, and delivery of his indigent request forms. Plaintiff also seeks an investigation. (*See* DE 84 at 1-3.)[6]

- Plaintiff's "notice and motion for injunctive order and/or declaratory relief," wherein Plaintiff describes his efforts during February 2019 and March 2019 to secure an indigent request form so that he can be placed on the indigent list. Plaintiff claims this affects his ability to communicate with his family. (DE 88 at 1-3.) Plaintiff even claims to have requested an "emergency phone call." (DE 88 at 2 ¶ 5.) *See also* MDOC PD 05.03.130 ("Prisoner Telephone Use"), ¶ G (effective Jan. 1, 2009).

- Looking to its introductory phrase and prayer for relief, Plaintiff's "motion for appropriate relief" seeks "a copy of the complete . . . case file," and "an order of reimbursement for [his] losses[.]" (DE 89 at 1-7.) Attached to Plaintiff's filing are property related documents and a property related Grievance Identifier (URF-19-02-551-28I). (DE 89 at 8-24.)

- Plaintiff's "motion to supplement and supplemental emergency PREA report," which alleges, *inter alia*, that Corrections Officer King "continues to harass me[.]" (DE 91)

---

[6] The Court suspects that Plaintiff is referring to "placement on indigent list," as outlined in MDOC PD 04.02.130 ("Indigent Prisoners"), ¶¶ B-C (effective Feb. 11, 2019).

- Plaintiff's "motion for order of appropriate relief" mentions Plaintiff's March 21, 2019 meeting with a parole board member and concerns the Michigan Parole Board's receipt of Plaintiff's same-day follow up letter (DE 95)

(*See* DE 70 at 8, DE 71 at 38, DE 72 at 2, DE 73 at 16, DE 74 at 11, DE 84 at 4, DE 88 at 4, DE 89 at 25, DE 91 at 9, DE 95 at 9.)

### 3. The MDOC's combined response to the first five of these motions addresses the scope of the current lawsuit and Plaintiff's claims that he is being starved.

The MDOC asserts that Plaintiff's motions "seek a wide variety of relief regarding individuals and facilities that are not part of the original lawsuit." (DE 90 at 3; *see also* DE 90 at 4.) As to injunctive relief, the MDOC argues that Plaintiff "has not shown a likelihood of success on the merits." (DE 90 at 9-10.) The MDOC is correct on both scores. Pointedly, the Court agrees that "[a] temporary restraining order is not designed for Plaintiff to open a lawsuit and then invite judicial oversight into the rest of his prison stay." (*Id.*)

The MDOC also argues that "[t]here is no present threat of irreparable harm[,]" in support of which it provides the March 21, 2019 affidavit of Charles Picotte, an MDOC Corrections Officer at URF. (DE 90 at 10-13; DE 90-1.) Picotte attests to the events of February 2019, specifically Thursday, February 7 and Sunday, February 10. (DE 90-1.) Among other things, Picotte attaches a log dated Sunday, February 10, 2019, which reflects the following 5:10 p.m. note:

"Goldman . . . tried to sign up for phone while he is still on NBTL [Non-Bond Top Lock]. When we refused, he said 'Nevermind' and returned to his cell. Has not been going to chow on 2-10 shift for several nights now[.]" (DE 90-1 at 12.)

### 4. Plaintiff's various requests about URF are outside the scope of the instant E.D. Mich. case and concern a location within the W.D. Mich.

The allegations underlying Plaintiff's 27-page complaint span a period of time from approximately <u>June 2017 through October 2017</u>. (DE 1 at 1-27 ¶¶ 1-73.)[7] During much of this time, Plaintiff was incarcerated at SMT. (DE 1 ¶¶ 4-44.) As noted above, each of the remaining nine Defendants is alleged to be employed at SMT in Jackson, Michigan. (DE 1 at 2-5, DE 9.)

In a prior report and recommendation, I acknowledged Plaintiff's claim that, on July 16, 2018, approximately 7 months after he filed this lawsuit, he was transferred from JCF to Ojibway Correctional Facility (OCF), then one of several MDOC correctional facilities in Michigan's Upper Peninsula. (DE 36 ¶¶ 45, 95; DE 59 at 2.) Plaintiff also represented that, on or about July 26, 2018, he was transferred to Baraga Correctional Facility (AMF). (DE 36 at ¶¶ 121-130.) It

---

[7] Attached to Plaintiff's initial filing is a November 13, 2017 "amended complaint for violation of civil rights," which appears to name only two Defendants – Warden (Melinda) Braman and Nurse Jim, both allegedly of SMT. (DE 1 at 11-12 ¶ 25; DE 1 at 40-58 [Ex. G].) It is not clear whether this lawsuit was ever filed, and, if so, where it was filed, although it is captioned with the E.D. Mich. (DE 1 at 42.)

11

appears he remained there through October 2018. (DEs 37, 40-41, 45, 50.) Apparently sometime in October 2018, Plaintiff was transferred to Alger Correctional Facility (LMF) in Munising, Michigan. (DE 52.) He was still at LMF in November 2018 and into January 2019. (DE 60-62, 64, 66.) Plaintiff's most recent transfer within the Upper Peninsula appears to have occurred during January or February 2019, as his return address changed from Alger Correctional Facility (LMF) to URF in Kincheloe, Michigan. (DE 66 at 3, DE 70 at 7.) Furthermore, as detailed above, he was at URF when he filed each of his most recent matters. (*See* DE 70 through DE 95.) Thus, it appears that Plaintiff remained in Upper Peninsula facilities from July 16, 2018 up until his very recent transfer to JCF.

In sum, Plaintiff's instant lawsuit concerns SMT, where it seems he has not resided since October 2, 2017. (DE 1 ¶ 45.) Moreover, as noted above, URF is located in Chippewa County in Michigan's Upper Peninsula, all of which is located in the Western District of Michigan. Given Plaintiff's recent transfer to JCF, any motions for injunctive or declaratory relief concerning URF have been rendered moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").

## II. ORDER

Preliminarily, the Court will not rule upon any requests contained within Plaintiff's non-motion filings, such as memoranda (*e.g.*, DE 75), supplemental reports (*e.g.*, DEs 78-79), emergency reports (*e.g.*, DE 83), exhibits (*e.g.*, DEs 85, 93), supplemental briefs (*e.g.*, DE 92), etc. If Plaintiff intends to file a "[a] written or oral application requesting a court to make a specified ruling or order[,]" Black's Law Dictionary (10th ed. 2014), he should label it a "motion," and the motion's conclusion should contain a clear and concise statement of the relief Plaintiff seeks. "The motion must: **(A)** be in writing…; **(B)** state with particularity the grounds for seeking the order; and **(C)** state the relief sought." Fed. R. Civ. P. 7(b)(1). A motion must also comply with Fed. R. Civ. P. 10 as to form. *See also* Fed. R. Civ. P. 7(b)(2). And, a motion must comply with E.D. Mich. Local Rule 7.1 (to the extent possible for a *pro se* prisoner).

Moreover, Plaintiff's motions concerning URF – however serious or meritorious the allegations therein – <u>are beyond the scope of the instant lawsuit and are not properly addressed in this venue</u>. Plaintiff should use the grievance process and, perhaps, thereafter a separate lawsuit filed in the Western District of Michigan (subject to whatever restrictions the Western District has imposed) to seek redress for his concerns related to the conditions of his confinement within any MDOC Upper Peninsula correctional facility, especially considering that Michigan's Upper Peninsula is entirely within the Western District of Michigan. For these

reasons, Plaintiff's aforementioned motions (DEs 70, 71, 72, 73, 74, 84, 88, 89, 91, 95) are **DENIED**. Accordingly, to the extent it sought a hearing on Plaintiff's "pending motions for injunctive/protective orders" or an "evidentiary hearing," Plaintiff's March 14, 2019 "request for hearing" (DE 86) is **DENIED**.

Finally, the current case is not a repository for Plaintiff's ongoing written complaints about any confinement concerns, without respect to when or where they allegedly arose. "[U]nrelated claims by prisoners against different defendants [and, in this case, different correctional facilities] belong in different lawsuits." *Townsend v. Rhodes*, No. 4:14–CV–10411, 2015 WL 5336630, *3 (E.D. Mich. Sept. 14, 2015) (citing *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Further, this lawsuit may not be used as a vehicle to thwart the internal grievance process, the pre-suit administrative exhaustion requirement, *see* 42 U.S.C. § 1997e(a), or the need to file separate lawsuits to address unrelated issues. The exhaustion requirement, with which Plaintiff Goldman is extremely familiar, "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citation omitted). Moreover, Plaintiff's apparent attempt to have this Court scrutinize and supervise his day-to-day incarceration in "real time" is entirely inappropriate. As a general matter, correctional officials are better

suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547-548 (1979). Moreover, "the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial." *Id.* at 548 (citations omitted).

Given Plaintiff's history of numerous filings in this case, many of which do not relate to the scope of the instant lawsuit or fall within the venue of this Court, any future filings/requests initiated by Plaintiff in this case **SHALL** be limited to: **(1)** the above-defined scope of the instant lawsuit, *i.e.*, Plaintiff's original complaint as it relates to the SMT Defendants; and, **(2)** <u>one-page in length</u>, within which Plaintiff may explain either his request or his need to file a motion detailing his request. The Defendants will then have one week within which to make a one-page response, if they so choose. Based on these single page submissions, the Court will determine whether leave to file a more fully briefed motion is warranted, and, if leave is warranted, the length of any briefing which will be permitted. Any further filings from Plaintiff which exceed either of these requirements, or which are not filed in accordance with any leave granted by this Court, will be **STRICKEN**.

Dated: April 5, 2019                s/*Anthony P. Patti*
                                                   Anthony P. Patti
                                                   UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on April 5, 2019, electronically and/or by U.S. Mail.

                                              s/Michael Williams
                                              Case Manager for the
                                              Honorable Anthony P. Patti